# Richmond

## John D. Boone v. Commonwealth of Virginia.

March 15, 1954.

Record No. 4184.

Present, All the Justices.

The opinion states the case.

*Thomas L. Woodward* and *Edwin C. Ferguson, Jr.,* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General* and *Francis C. Lee, Assistant Attorney General,* for the Commonwealth.

Buchanan, J., delivered the opinion of the court.

John D. Boone, defendant below, shot and killed Richard Collins. A jury found him guilty of murder in the second

degree, fixed his punishment at ten years in the penitentiary and he was sentenced accordingly. The only question presented by his assignments of error on this appeal is whether the evidence was sufficient to support the verdict. We are told that this was his second trial, the first having resulted in a hung jury.

The shooting occurred between eight and nine o'clock on a Saturday night in April, 1952, in the home of Betty Collins, a widow. Living in the home with her were her son, Richard Collins, the deceased, and his wife, Catherine, then fifteen years old; Thelma Collins, sixteen; Goldie Collins, seven, and an infant, children of Betty. Boone, the defendant, had also lived in this home for some eighteen months and was the father of the infant.

This home was a small, one-story cottage near Suffolk having five rooms. A door opened from a front porch into a living room, back of which was Betty's room and back of that a kitchen. There was no hallway but the doors into these rooms were in line with each other and when open permitted one to see from the living room back through the kitchen door. To the right of the living room was Boone's room and immediately back of that was the room occupied by Richard Collins and his wife. The door from Boone's room opened into the living room and the door from Richard's room opened into Betty's room.

On the evening of the homicide, according to the Commonwealth's evidence, Boone left the house about seven o'clock and came back a half hour or so later. He had been drinking and he and Betty had an argument about some money he owed her for cigarettes. Boone grabbed Betty and threw her down on the floor. Catherine, Thelma and Goldie were present when this happened and Goldie began to cry. Catherine then ran to get Richard, who was at a shop a short distance away. Just before Richard reached the house Boone went back to his room and pushed the door almost shut, saying as he went, "Don't nobody come back here to this room." About the time Boone entered

his room Richard came through a back door into the kitchen and said to his mother, "Why don't you stop this mess?" He then started back out of the door but his sister Thelma said to him, "Go in there and see if you can't talk to John Boone." She explained at the trial that most of the time when Boone would come in drinking he could be talked into going on to bed and she thought Richard might "talk some sense into him" so he wouldn't fuss at her mother any more.

Richard started toward Boone's room, got to the door and looked in. Nobody testified to anything being said then by Richard or Boone, but Richard turned around, ran back to his own room, came out carrying his single-barrel shotgun down by his side and pointed down. As he came from the doorway of his room into Betty's room Boone shot him with a shotgun, also single-barreled, from a distance close enough to leave powder burns on his shirt and on the skin around the wound. The coroner testified that the load went into Richard's heart, destroying the heart tissue and causing instant death.

The defendant now claims that he shot in self-defense but he did not claim so in the beginning. When the sheriff arrived at the scene at 9:10 p.m., the defendant was not there. However, he returned to the house while the sheriff was out looking for him and was arrested there about ten o'clock, nearly drunk. He then told the sheriff that he knew nothing about the matter; that he was asleep in his room; that he was awakened by the shot and got up to see what had happened, found that Richard had been shot and saw a gun there on the floor. He said he thought Richard had committed suicide. Later that night at the jail he repeated that version to the sheriff, the sheriff wrote it out and the defendant signed it. The statement was introduced in evidence.

On his trial the defendant testified that he was sitting on the side of his bed and heard somebody tell Richard to go back and talk to him; that Richard came to his door, peered in and ran back to his room where he could hear him getting his gun, pulling it out from behind the dresser. He said that

when Richard got to his own room door he heard somebody say, "Don't go in that room with that gun;" that he then got his own gun, which he kept at the foot of his bed, got the only shell he had for it from the dresser on the opposite side of the room, loaded the gun and was sitting on his bed when Richard pushed open the door; that Richard pushed the door open with his gun barrel and when he saw it he stood up and fired. He said he thought Richard was going to kill him, otherwise he would not have shot him; that Betty had told him to watch Richard because he would hurt him.

Defendant testified that right after the shooting he went to a friend's, who lived half a mile away, to get help but did not find him and he then came back to the house and cleaned up the blood to keep people from tracking it over the house. He gave the different account to the sheriff, he said, because he was scared and nervous and disgusted with himself.

This version of the shooting given by the defendant on his trial is in direct conflict on material points with the testimony for the Commonwealth, by which we are now controlled. The Commonwealth's testimony was that the defendant was not in his room when he fired the fatal shot but was standing in the living room outside of his door; that Richard was not at the defendant's door when he was killed but had barely got outside of his own door. There was no blood in the living room where defendant claimed Richard was shot. The defendant himself testified that the first blood was about four feet inside of the room back of the living room, i.e., in Betty's room, where all the other witnesses placed Richard when defendant fired. Richard's door was only about five feet from the door between Betty's room and the living room. It was only six or seven feet from Boone's doorway to the door of Richard's room and the shotgun used by Boone was about 45 inches long.

Both the oral and physical evidence supported the Commonwealth's theory that Boone killed Richard without warning as Richard stepped out of his own door carrying the shotgun down by his side, pointed down and not loaded.

Whether the defendant shot in self-defense depends on whether he reasonably believed that it was necessary to shoot as he did in order to save his own life or avoid serious bodily harm. Fear alone would not excuse the killing. There must have been some overt act by the deceased indicative of imminent danger at the time. *Mercer* v. *Commonwealth*, 150 Va. 588, 597, 142 S. E. 369, 371. These are ordinarily questions for the jury. They become questions of law only when reasonable men should not disagree as to what is proved by the evidence and the reasonable inferences from it.

"When the Commonwealth has proved the commission of a homicide, and has pointed out the accused as the criminal agent, then it may rest its case, and unless the accused shows circumstances of justification, alleviation or excuse, a verdict of murder in the second degree will be warranted. * * *

"If the evidence so offered by the accused is shown to be false, and is insufficient to cause the jury to have a reasonable doubt as to his guilt, the case so made by the Commonwealth is not overcome, and a verdict of second-degree murder is still warranted." *Johnson* v. *Commonwealth*, 188 Va. 848, 853-4, 51 S. E. (2d) 152, 154.

If from the improbability of his story and his manner of relating it, or from the contradictions within itself or by other credible evidence, or from the attending facts and circumstances, reasonable men might believe that the justification, alleviation or excuse offered by the defendant was not true, the jury had a right to reject it, leaving the presumption of second-degree murder to stand. *Randolph* v. *Commonwealth*, 190 Va. 256, 263, 56 S. E. (2d) 226, 229.

If the defendant's plea of self-defense was genuine it is almost if not altogether incredible that he would not have given that excuse when he was arrested. Instead, on three different occasions he told the sheriff that he was asleep when the shooting occurred and he thought the deceased had committed suicide.

Defendant's account of how it happened given at the

trial was contradicted in very material respects by the Commonwealth's witnesses as well as by the physical facts.

His leaving the scene and coming back to the house and washing up the blood could reasonably be interpreted as evidencing a sense of guilt contrary to his later claim that he killed only from necessity.

While he testified that he knew where Richard's gun stayed, and heard him pull it out from behind the dresser before he got his own gun, he also said that he did not know whether Richard had any shells for his gun because he never entered into Richard's room.

The evidence is uncontradicted that the deceased went to Boone's room on a peaceful mission. When he got to the door and looked in he saw something or something happened to cause him to run back to his room and get his gun. While the defendant testified that he did not get and load his own gun until he heard Richard coming with his and heard a warning given by somebody, the Commonwealth's evidence was that the defendant had made ready to shoot before that time because he killed Richard as the latter stepped out of his own room.

On the evidence the jury had a right to say that Boone did not shoot because he reasonably believed that he was in imminent danger of death or serious bodily harm, and hence their verdict of murder in the second degree was warranted.

The judgment below is

*Affirmed.*