COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Willis and Lemons
Argued at Richmond, Virginia

LAMAR ANTHONY PENDERGRASS

MEMORANDUM OPINION[*] BY
v.   Record No. 2969-97-2          JUDGE DONALD W. LEMONS
                                       FEBRUARY 23, 1999
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
James F. D'Alton, Jr., Judge

Jay "C" Paul (Johnson & Paul, P.C., on brief),
for appellant.

Kathleen B. Martin, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.

Lamar Anthony Pendergrass appeals his conviction for malicious wounding and use of a firearm in the commission of malicious wounding.  On appeal, he argues that the trial court erred in refusing his requested jury instruction on self-defense. Because we hold that the trial court did not err in refusing his instruction, we affirm.

I.   BACKGROUND

On August 2, 1996, between 7:45 and 8:00 a.m., Mark Brown, the victim, was shot while entering his vehicle that was parked in the parking lot of a hotel in the City of Petersburg.  Brown testified that he was seated in his car, and "just when . . . [he] was about to turn the ignition on" he heard a shot.  He "looked down" and "saw the blood."  He looked up and saw Lamar

---

[*]Pursuant to Code § 17.1-413, recodifying Code § 17-116-010, this opinion is not designated for publication.

Anthony Pendergrass.  Pendergrass shot him two more times.  Brown testified that he did not have a gun in his possession that morning.

Pendergrass stated that on the evening of August 1, 1996, the night before the shooting, he was drinking heavily. Pendergrass' wife was involved in a hotly contested custody dispute with Brown, with whom she had a seven-year-old child, D'Angelo.  By court order, D'Angelo was to be turned over by the Pendergrasses to Brown on August 2, 1996.  Pendergrass testified that he drank "two bottles of Hennesy" at his house but "[e]ventually that wasn't enough so he left his house and went to a store where he purchased "two twelve packs of beer." Pendergrass testified that he continued drinking until he "was about out of beer" sometime between 2:00 and 2:30 a.m. on August 2, 1996.

Pendergrass stated that he went with a friend to downtown Petersburg, where he obtained more alcohol.  Pendergrass testified that he was "uncomfortable" in that neighborhood and that he took his gun out of his trunk and placed it in his waistband.  He drove through the city and parked on Sycamore Street where he "passed out."

Pendergrass woke up between 7:00 and 7:15 a.m. that morning. He started to drive home, when he saw Brown's vehicle in a hotel parking lot and "went crazy."  He drove into the lot and saw Brown getting into his car.  Pendergrass admitted that when he saw Brown, "I just went off."  Pendergrass alleged that Brown

pulled a gun on him and that the two men yelled obscenities at each other. Pendergrass stated that he "turned around" and "panicked" and that he was "scared." Pendergrass said that Brown made a comment about Pendergrass never seeing D'Angelo again, and Pendergrass admitted that he then shot Brown.

## II.  JURY INSTRUCTION

Upon review of jury instructions given or refused at trial, an appellate court is charged with seeing that "the law has been clearly stated and the instructions cover all issues which the evidence fairly raises." Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (citations omitted). The evidence relied on to support a proffered instruction must amount to "more than a scintilla." Morse v. Commonwealth, 17 Va. App. 627, 633, 440 S.E.2d 145, 149 (1994) (citations omitted). "An instruction that is not supported by the evidence, however, is properly refused." Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479-80 (1993) (citations omitted).

"Homicide [or wounding] in self-defense may be either justifiable or excusable. If it is either, it entitles the prisoner to an acquittal." Peeples v. Commonwealth, 28 Va. App. 360, 366, 504 S.E.2d 870, 873 (1998) (alterations in original) (citations omitted). When an accused has been charged with malicious wounding, he or she is entitled to request an instruction on self-defense if it is supported by the evidence. See Foster v. Commonwealth, 13 Va. App. 380, 412 S.E.2d 198 (1991). Justifiable self-defense occurs when the accused has

- 3 -

acted totally without fault.  See Foote v. Commonwealth, 11 Va. App. 61, 67, 396 S.E.2d 851, 855 (1990).  "Fault" is defined as "any conduct on the part of an accused which a jury may reasonably infer from the evidence to have contributed to an affray."  Bell v. Commonwealth, 2 Va. App. 48, 58, 341 S.E.2d 654, 659 (1986) (citations omitted).  "If a defendant is even slightly at fault, the killing is not justifiable homicide." Perricllia v. Commonwealth, 229 Va. 85, 94, 326 S.E.2d 679, 685 (1995).  Excusable homicide in self-defense, however,

> occurs where the accused, although in some fault in the first instance in provoking or bringing on the difficulty, when attacked retreats as far as possible, announces his desire for peace, and kills his adversary from a reasonably apparent necessity to preserve his own life or [to] save himself from great bodily harm.

Smith v. Commonwealth, 17 Va. App. 68, 71, 435 S.E.2d 414, 416 (1993).

At trial, Pendergrass requested the following instruction on justifiable self-defense:

> If you believe that the defendant was without fault in provoking or bringing on the fight and if you further believe that the defendant reasonably feared, under the circumstances as they appeared to him, that he was in danger of being killed or that he was in danger of great bodily harm, then the killing was in self-defense and you shall find the defendant not guilty.

The testimony at trial revealed that Pendergrass had been drinking excessively on the night of August 1, 1996 and the morning of August 2, 1996.  He brought a gun to the confrontation

with Brown. He and Brown exchanged hostile words about the custody of D'Angelo. Pendergrass testified that Brown "pulled a gun" on him. Pendergrass stated that he then "turned around" and that he "was walking real fast away from [Brown]." Pendergrass stated, "[w]e both were still screaming" and that Brown made a remark stating that Pendergrass would never see D'Angelo again.

Pendergrass stated "[w]hen he said that to me, I don't know . . . I just went crazy." Pendergrass testified "I just felt like I snapped. I went crazy. I realized I had my gun inside my waist. I just pulled it out, turned around and I fired. He was just getting into his car at the time. After I fired the shots, I stood there, because I couldn't, I just freaked [sic]." Pendergrass testified that he shot Brown in response to his statements about D'Angelo. Furthermore, Pendergrass testified that he shot Brown more than one time because he was "enraged . . . by what he said, all [the] things that were going on."

Pendergrass requested an instruction on justifiable self-defense which requires that he be without fault. By his own testimony at trial, Pendergrass was not without fault in provoking or bringing on the fight. The trial court did not err in refusing the instruction on justifiable self-defense, and the conviction is affirmed.

Affirmed.