**Wytheville.**

96　107
101　844
_____
96　107
103　834

## JACKSON v. COMMONWEALTH.

### JUNE 23, 1898.

1. CRIMINAL LAW AND PROCEDURE—*Indictment for Malicious Assault—Stating Weapon Unnecessary.*—In an indictment for malicious assault with intent to kill it is unnecessary to state the weapon with which the assault was made.

2. CRIMINAL LAW AND PROCEDURE—*Evidence—Separation of Witnesses—Discretion of Trial Court.*—Trial courts are allowed a discretion in the matter of the separation of witnesses. If, in its discretion, the trial court excludes all the witnesses from the court-room but one, its action in that respect will not be reversed unless it appears that the discretion was improperly exercised, and that it operated to the prejudice of the party complaining of it.

3. CRIMINAL LAW AND PROCEDURE—*Evidence—Relevancy.*—On the trial of an employee of a water company for malicious assault upon a consumer, while cutting off his water for failure to pay his water tax, it is improper to allow the consumer to testify that the employee who was directed to collect the tax was indebted to him in a larger amount than the tax due by the consumer. Such evidence is irrelevant.

4. CRIMINAL LAW AND PROCEDURE—*Evidence—Motive.*—When the motive with which an act was done is material, the accused may testify as to what his motive was.

5. CRIMINAL LAW AND PROCEDURE—*Evidence—Examination of Witness—Exceptions after a Question has been Answered*—After a question has been propounded to a witness, and he has been allowed to answer it without objection, it is too late to object on the ground that the question was leading.

6. CRIMINAL LAW AND PROCEDURE—*Allowing Prosecuting Attorney to Retire, and Case to be Conducted by Private Prosecutor.*—The action of a trial court in permitting the prosecuting attorney to retire from a criminal case, and in allowing attorneys employed by the private prosecutor to conduct it, and open and close the argument before the

jury, is not subject to review unless it appears that it was improperly done, and that the accused was prejudiced thereby.

7. CRIMINAL LAW AND PROCEDURE—*Instructions Presenting Prisoner's Theory of Case.*—When evidence has been introduced in a criminal prosecution tending to sustain opposing theories as to the motive which induced an assault, and the jury has been instructed upon the theory of the Commonwealth, it is error to refuse an instruction setting forth the law upon the theory of the prisoner.

8. CRIMINAL LAW AND PROCEDURE—*Repelling an Assault—Party Assaulted not Compelled to Retreat.*—A person assaulted while in the discharge of a lawful act, and reasonably apprehending that his assailant will do him bodily harm, has the right to repel the assault by all the force he deems necessary, and is not compelled to retreat from his assailant, but may, in turn, become the assailant, inflicting bodily wounds until his person is out of danger.

Error to a judgment of the County Court of Russell county rendered January 27, 1898, on an indictment for malicious assault with intent to maim, disfigure, disable, and kill.

*Reversed.*

The plaintiff in error, Charles Jackson, was indicted for a malicious assault on George W. Ratliff. He was tried, found guilty, and sentenced to the penitentiary for one year. Jackson had been employed by the manager of the Clinch Valley Coal and Iron Company to collect water rents of Ratliff. The manager gave Jackson an order on Ratliff for $5 for water rents, and directed him to cut off the water if the order was not paid. He presented the order and demanded the amount thereof, but Ratliff refused to pay, claiming that it was for a larger amount than he owed, and saying he would settle with the manager. Jackson then notified Ratliff that unless the amount was paid he (Jackson) would cut the water off. Jackson went off and got his tools and returned, and was in the act of cutting off the water at the cut-off of the company, when Ratliff came up and cursed Jackson, ordered him off, and finally struck him a violent blow in the face. Thereupon a

fight ensued in which Jackson struck Ratliff several times with a small iron wrench. There had been a previous difficulty between the parties at another time concerning other matters.

In his direct examination, Ratliff stated, amongst other things: "If the water had been cut off my water boiler or pipe was liable to burst from the steam, and injure my family." On cross-examination he was asked: "Wasn't your water cut off last June, or some time last summer, for the failure to pay you water taxes; your boiler was not burst then, was it?" To which the witness replied: "No, sir." The question and answer were objected to by the Commonwealth, and the objection was sustained by the trial court. The witness was further asked, on cross-examination: "Didn't you know it was a rule of the company and Chester Williams that when a party is in default in the payment of his water tax that his water is turned off?" To which the witness replied: "I didn't know what Ches. Williams's rule was; I knew the company cut the water off when the taxes were not paid, but I had made arrangements to pay mine." This question and answer were, on motion of the Commonwealth, ruled out on the ground that the rules of the company were printed, and were the best evidence. These are the questions and answers referred to in the opinion as being the subjects of the second and third assignments of error. The other facts sufficiently appear in the opinion of the court. A writ of error was refused by the Circuit Court.


*May, May & Smith*, for the plaintiff in error.


*Attorney-General A. J. Montague*, for the Commonwealth.


KEITH, P., delivered the opinion of the court.

Charles Jackson was indicted in the County Court of Tazewell county for maliciously and feloniously wounding George Ratliff, with intent to maim, disfigure, disable, and kill. To this indictment, and to each of its two counts, the defendant demurred, and the action of the court in overruling the demurrer to the first count is the first error assigned.

The objection urged is that the count does not state the weapon with which the assault was made. We are of opinion that it was unnecessary to do so, and that the demurrer was properly overruled. See *Canada* v. *Commonwealth*, 22 Gratt. 899.

During the progress of the trial the prisoner, by counsel, on the cross-examination of George Ratliff, upon whom the assault is alleged to have been made, asked him certain questions, to which he made answer. Upon the motion of the Commonwealth these questions and answers were excluded by the court, and these several rulings of the court are the subjects of the second and third assignments of error.

We are of opinion that the questions and answers should have gone to the jury. They are relevant and might have had some effect upon the minds of the jury, but they are not of sufficient interest and importance to warrant an extended discussion in this opinion.

At the beginning of the trial, upon the motion of the Commonwealth, the witnesses were ordered to leave the court-room and not to return until called, but, at the request of counsel employed to aid the prosecution, George W. Ratliff was permitted to remain in court during the trial. This ruling of the court is assigned as error.

Trial courts must be allowed a discretion in such matters. There might be circumstances which would render it improper to permit one witness to remain while others were excluded, but in order to constitute it a ground for reversal it must appear that the discretion of the trial court was improperly exercised, and that it operated to the injury of the prisoner.

Counsel for the prosecution were permitted to ask George Ratliff: "Didn't Charles Jackson owe you?" To which Ratliff replied: "Yes, sir; what he owed me overpaid the order for my water tax." It seems that Charles Jackson was sent to the premises of George Ratliff to collect of him the water rates due to the Richlands Water Works, and out of this effort to collect what was claimed to be due by Ratliff, the difficulty grew which resulted in the alleged assault by Jackson upon him. This question and answer should have been excluded. That Jackson owed Ratliff was entirely immaterial, and the state of accounts between Jackson and Ratliff irrelevant to the subject under investigation.

The prisoner, while testifying in his own behalf, was asked: "Did you, in your attempt to cut off the water from George Ratliff, do so through malice towards George Ratliff?" To which the witness answered: "I did not through malice. I thought I had the right to cut off his water." Thereupon the Commonwealth, by counsel, moved the court to exclude both question and answer, which was done, and the prisoner excepted. We think this exception is well taken. The question, it is true, is leading in form, and if it had been objected to at the proper time on that account it should have been excluded, but it was too late to object for that cause after the answer had been given.

Wharton on Criminal Evidence (9th Ed.), sec. 431, says that "a party when examined as a witness, may be asked as to his own motives or intentions, when these are material."

Rice on Evidence, Volume 3, secs. 571 and 288, is to the same effect.

In *Kerrains* v. *People*, 60 N. Y. 228, it appears that the prisoner, who was indicted for an assault with a deadly weapon, went to the wood-house, and came back with the axe in his hands with which the blow was inflicted for which he was prosecuted. While upon the stand, as a witness in his own behalf, he was asked: "What was your intention in

taking the axe from the shed to the house?" The question
was excluded. Chief Justice Church, who delivered the
opinion, approved the rule as stated by Hogeboom, J., in
*McKown* v. *Hunter*, 30 N. Y. 625, "that when the motive of
a witness in performing a particular act, or making a particu-
lar declaration, becomes a material issue in a cause, or reflects
important light upon such issue, he may himself be sworn in
regard to it, notwithstanding the difficulty of furnishing con-
tradictory evidence, and notwithstanding the diminished credit
to which his testimony may be entitled as coming from the
mouth of an interested witness." See also *People* v. *Baker*, 96
N. Y. 340.

The sixth assignment of error is to the ruling of the court
permitting the prosecuting attorney to retire, and in allowing
Chapman & Gillespie, attorneys employed by the private
prosecutor, to conduct the case, and open and close the argu-
ment before the jury.

This assignment of error is not well taken. The action of
the court was within its discretion, and cannot be reviewed
unless it be made to appear that it was improperly exercised,
and that the accused was prejudiced by it.

After the evidence was all in, the Commonwealth asked for
two instructions, which were given by the court, and are as
follows:

No. 1. "The court instructs the jury that a man is not
obliged to surrender the possession of his goods, his lands or
other property to a wrong-doer without resistance, but, upon
the contrary, he has the right to use so much force as is neces-
sary, or reasonably appears to be necessary, to preserve his
possession against one who wrongfully or unlawfully seeks or
attempts to deprive him of such possession, or the uninter-
rupted enjoyment thereof."

No. 2. "The court instructs the jury that if you believe
from the evidence, beyond all reasonable doubt, that the pris-
oner provoked the combat, or produced the occasion between

himself and George Ratliff, in evidence before you, in order to have a pretext to kill the said Ratliff, or to do him some serious bodily harm, then the prisoner is guilty of malicious wounding as charged in the indictment, as the law is that a person cannot bring on a difficulty with a felonious intent, and then defend his acts done in said difficulty upon the ground that he was acting in self-defence."

The prisoner asked for twelve instructions, of which the court gave the first six, and refused the others, and to the action of the court in granting the instructions on behalf of the Commonwealth and refusing the instructions asked for by him, the defendant excepted, and this bill of exceptions constitutes the eighth and ninth assignments of error.

The tenth instruction asked for by the defendant is as follows: "If you believe from the evidence that the defendant was lawfully cutting off the water of George W. Ratliff, and that whilst so doing he was assaulted by said Ratliff, and that said defendant reasonably apprehended that said Ratliff would do him bodily harm, then you are instructed that the defendant had the right to repel such assault by all the force he deemed necessary, and that he was not compelled to retreat from said Ratliff, but might, in his turn, become the assailant, inflicting bodily wounds until his person was out of danger." It correctly propounded the law, and should have been given.

Charles Jackson was, on December 8, 1897, sent by Chester Williams, who was then in charge of the Richlands Water Works, to present George Ratliff with a bill for his water tax for five months, and with instructions that if the bill was not paid the water was to be cut off. Ratliff refused to pay the bill, and a controversy arose which ended in a difficulty, during which Ratliff sustained the injuries at the hands of Charles Jackson for which the latter was indicted.

The theory of the prosecution is that in going upon the premises of George Ratliff, the real motive of the plaintiff in error was to gratify a private grudge which he cherished

against Ratliff; that the alleged purpose to collect the water rent was a mere pretext, and that the difficulty which ensued was deliberately sought by the plaintiff in error; and therefore, he cannot be heard to excuse the assault upon Ratliff as having been made in self-defence.

The contention of the plaintiff in error is that he went to Ratliff upon a lawful errand, and was by him assaulted, without any excuse or justification, and that the injuries sustained by Ratliff were inflicted upon him in the course of a difficulty in which he himself was the aggressor, and plaintiff in error was acting in self-defence.

There is evidence in the record tending to sustain each of these opposing theories, and the court should have given, when requested, instructions to the jury covering both aspects of the case. As we have seen, the instructions for the Commonwealth were given, and we are of opinion that the court erred in refusing to give instruction No. 10 asked for by the plaintiff in error. See *Stoneman's Case*, 25 Gratt. 887. Instruction No. 10, together with the other instructions given the jury, would have been sufficient in our judgment to enable it to reach a proper verdict.

We are of opinion that the judgment of the County Court of Tazewell county should be reversed, and a new trial awarded in accordance with the views expressed in this opinion.

*Reversed.*