# Richmond

## ELLIS DODSON v. COMMONWEALTH.

January 12, 1933.

Present, All the Justices.

The opinion states the case.

*Burnett Miller, C. T. Bowers* and *Burnett Miller, Jr.,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

The plaintiff in error was found guilty of murder in the second degree and sentenced to the penitentiary for a term of eight years.

It is assigned as error that the court gave this instruction:

"The court instructs the jury that where the plea of self-defense is relied upon in a trial for murder, the law is that the plea of self-defense is not available to a party unless he was without fault in bringing about the difficulty, and, in any case, the necessity relied upon to excuse the killing must not arise out of the prisoner's misconduct."

In *Vaiden's Case,* 12 Gratt. (53 Va.) 717, and in *Wallen's Case,* 134 Va. 773, 114 S. E. 786, both cases in which the evidence warranted the giving of the instruction, the doctrine contained in the instruction herein involved was approved.

Complaint is made of the instruction on the ground that under the evidence in the present case the court fails to differentiate between justifiable and excusable

homicide. In other words, it is contended that by this instruction the court told the jury that the plea of self-defense interposed by the accused was not available unless he was entirely without fault in bringing about the difficulty, and then goes further and tells the jury that the necessity relied upon to excuse the killing must not arise out of the prisoner's own misconduct.

In the brief of the Attorney-General it is conceded that the instruction is erroneous in one respect, viz: That it speaks of self-defense as though confined to justifiable homicide only, and ignores the doctrine of excusable homicide in self-defense.

In *Jackson's Case*, 96 Va. 107, 30 S. E. 452, it was held that "a person assaulted while in the discharge of a lawful act, and reasonably apprehending that his assailant will do him bodily harm, has the right to repel the assault by all the force he deems necessary, and is not compelled to retreat from his assailant, but may, in turn, become the assailant, inflicting bodily wounds until his person is out of danger."

That case laid down the accepted rule of justifiable homicide in self-defense, and is not qualified to any extent by the later case of *Jackson* v. *Commonwealth*, 98 Va. 845, 36 S. E. 487.

In *McCoy* v. *Commonwealth*, 125 Va. 771, 776, 99 S. E. 644, 646, Judge Burks, in speaking of the difference between justifiable and excusable homicide in self-defense, quotes with approval the following: "The rule may be briefly stated thus: If the accused is in no fault whatever, but in the discharge of a lawful act, *he need not retreat,* but may repel force by force, *if need be,* to the extent of slaying his adversary. This is *justifiable* homicide in self-defense. But if a sudden fight is brought on, without malice or intention, the accused, if in fault, *must retreat as far as he safely can,* but, having done so and in good faith abandoned the fight, may kill his adversary, if he cannot in any other way preserve his life or save him-

self from great bodily harm. *Vaiden's Case,* 12 Gratt. (53 Va.) 717, 729."

In *Hodges* v. *Commonwealth,* 89 Va. 265, 272, 15 S. E. 513, 516, the Supreme Court approved the following instruction defining justifiable homicide: "The court instructs the jury that justifiable homicide is the killing of a human being in the necessary, or apparently necessary, defense of one's self or family from great bodily harm, apparently attempted to be committed by force, or in defense of home, property, or person, against one who apparently endeavors, by violence or surprise, to commit a felony on either."

In our investigation, the most satisfactory discussion of the distinction to be drawn between justifiable and excusable homicide is found in that oftentimes overlooked but most excellent work, Davis's Criminal Law, prepared by J. A. G. Davis, who at one time was professor of law in the University of Virginia. On pages 70, 72, 76 and 77, we read:

"Homicide in defense of person or property, under certain circumstances of necessity; which is justifiable by the permission of the law. This takes place when a man, in defense of his person, habitation or property, kills another, who manifestly intends and endeavors, by violence or surprise, to commit a forcible or atrocious felony upon either. In the cases to which this ground of justification applies, no felony has been committed, but only attempted; and the homicide is justifiable in order to prevent it.

"All felonies may not be so prevented. A distinction is made between such felonies as are attended with force, or any extraordinary degree of atrocity, which in their nature betoken such urgent necessity as will not allow of any delay, and others of a different kind and unaccompanied by violence on the part of the felon. Those only which come within the former description may be prevented by homicide; as murder, rape, robbery, arson,

burglary and the like. In the attempt to commit either of these, the *party whose person or property* is attacked is not obliged to retreat, but may pursue his adversary until he has secured himself from all danger, and if he kill him in so doing, it is called justifiable self-defense. And the same justification extends to homicide committed in the mutual and reciprocal defense of such as stand in the relations of husband and wife, parent and child, master and servant; for the act of the assistant shall have the same construction in such cases as the act of the party assisted should have had, if it had been done by himself, in consequence of the relation between them.

"This right of self-defense is founded on the law of nature, which confers on every individual the right to defend and maintain the possession of that which belongs to him, by those means which are necessary to attain this object."

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"In these several kinds of *justifiable* homicide, it may be observed, that the slayer is in no kind of fault whatsoever, not even in the minutest degree; and is therefore to be totally acquitted and discharged, with commendation rather than blame. But that is not quite the case in excusable homicide, the very name whereof imports some fault, some error, or omission; so trivial, however, that the common law excuses it from the guilt of felony, and our law from all punishment.

"II. Excusable homicide is of two kinds; either by misfortune or misadventure; or in self-defense.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"2. Homicide in self-defense, or *se defendendo,* is that committed by a man upon a sudden affray, in order to preserve his life. This species of self-defense must be distinguished from that which has been mentioned as one of the kinds of *justifiable* homicide. That takes place on the attempt to commit a felony, and its object is to hinder its perpetration; which is not only a matter of excuse

but of justification. But the self-defense of which we are now speaking, is that whereby a man may protect himself from an assault or the like, in the course of a sudden broil or quarrel, by killing him who assaults him; a self-defense which is said to be culpable, but through the benignity of the law excusable. And this is what the law expresses by the term *chance-medley*, which in its etymology signifies a casual affray or sudden quarrel; though this term is in common speech often erroneously applied to any manner of homicide by misadventure.

"This right of self-defense does not imply a right of attacking; for instead of attacking one another for injuries past or impending, men need only have recourse to the proper tribunals of justice. Neither does it imply a right to take the life of an antagonist on every casual reencounter; for this would place human life too much at the mercy of those disposed to destroy it. It can only be exercised in sudden and violent cases, when great, certain and immediate suffering would be the consequence of waiting for the assistance of the law. For which reason, the law requires that the person who kills another in his own defense should have retreated as far as he conveniently or safely can, to avoid the violence of the assault; and that not fictitiously, or in order to watch his opportunity, or to gain breath, but from a real tenderness of shedding his brother's blood. The idea of dishonor being attached to such means of avoidance will not excuse the neglect of it; for the laws can acknowledge no dishonor in obedience to what they command, and will themselves avenge the injuries that are suffered. The party assaulted must therefore flee as far as he well can, by reason of some wall, ditch, or other impediment, unless he be prevented from doing so by falling; or as far as the fierceness of the assault will permit him, for it may be so fierce and violent as not to allow him to yield a step without manifest danger of his life, or enormous bodily harm, and then in his defense he may kill his as-

sailant instantly. The only case in which the law does not require the party to retreat at all, or under any circumstances, is when he is assaulted in his own house; there he need not fly as far as he can; for he has the protection of his house to excuse him from flying; as that would be to give up by his flight the possession of his house to his adversary. But in this as in other cases, the assault must be of such a character as to expose him to imminent danger.

"The law also requires, in order for homicide to be excusable in self-defense, that the party, besides retreating as far as he could with safety, should then have killed his adversary through mere necessity in order to avoid immediate death; and he can in no case excuse such killing, even after a retreat, unless there were reasonable ground to apprehend that he would otherwise have been killed himself."

We are in entire accord with the doctrine above stated, and in our opinion it is consonant with the Virginia decisions, when read in the light of the facts in the particular case. The difficulty arises when there is a wrong application of the principles.

In a note in 6 Va. Law Reg., page 176, Judge Burks, after discussing the holdings in *Jackson's Case*, 96 Va. 107, 30 S. E. 452, and in *Jackson's Case*, 98 Va. 845, 36 S. E. 487, has this to say: "But the law of *excusable* homicide in self-defense is equally well settled in Virginia. Here, although the accused were in some fault in the first instance, yet if he has abandoned the conflict in good faith and 'retreated to the wall,' he will be excused if he kill his adversary from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm.

\* \* \* \* \* \* \* \* \*

"To tell a jury that 'a prisoner cannot justify the killing of the deceased by a plea of necessity, unless he was without fault in bringing that necessity upon him-

self,' would be misleading *if* there was evidence tending to show excusable homicide in self-defense. Few juries will notice the distinction between *'justify'* and *'excuse'* unless their attention is called to it, and *where the evidence warrants it,* the court should point out the distinction by proper instructions upon the law of the subject." Citing *Vaiden's Case, supra.*

 A careful examination of the evidence in the case at bar leads to the conclusion that the doctrine applicable to a case of justifiable homicide is not involved, but that the doctrine applicable to a case of excusable homicide is directly involved; and, therefore, it was error to ignore in the instruction that phase of the case.

It was next assigned as error that the court gave this instruction:

 "The court instructs the jury that as to the imminency of the danger which threatened the prisoner and the necessity of his killing in the first instance, the prisoner was the judge, but *he acted at his peril, as the jury must pass upon his action in the premises viewing said actions from the prisoner's standpoint at the time of the killing.* And if the jury believe from the facts and circumstances in the case that the prisoner had reasonable grounds to believe, and did believe, the danger imminent, and that the killing was necessary to preserve his own life, or to protect him from great bodily harm, he is excusable for using a deadly weapon in his defense, otherwise he is not."

The complaint lodged against the instruction is the use of the italicized language. The instruction is concededly not in conformity with the "stock" instructions given in cases of this character and approved by this court. Though we would be unwilling to reverse this case if that were the only error committed and the evidence clearly demonstrated the guilt of the accused, we do not approve the instruction, as it may have a tendency to mislead the jury. The test to be applied is not whether

the accused acted at his peril, but whether or not he had reasonable grounds to act on appearances, and that question is one of fact for the determination of the jury.

There are other assignments of error involving the giving and refusing of certain instructions. The questions argued are not likely to arise upon a new trial of the case, and we do not deem it necessary to discuss the court's action in this regard.

The last error assigned is that the jury were influenced in their verdict by the argument of the assistant prosecutor. In his argument to the jury, he reached this pinnacle of oratory:

"If juries will not convict in such cases as this, God save the Commonwealth, and if this jury does not convict the defendant they had better take the key to the hall of justice and lock the door, bury the key in the court-house yard, and erect a marker and place upon it these words: 'Here lies buried the key to the Hall of Justice of Madison County.' "

We are constrained to conclude that the language is more sophomoric than inflammatory, and could not possibly have prejudiced the jury against the accused.

For the error committed by the trial court in giving instruction Number 10, first hereinabove quoted, the case must be reversed and remanded for a new trial.

*Reversed and remanded.*