COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Bumgardner and Humphreys
Argued at Richmond, Virginia


DECARLOS D. COLEMAN

MEMORANDUM OPINION[*] BY
v.   Record No. 1654-01-2   CHIEF JUDGE JOHANNA L. FITZPATRICK
DECEMBER 10, 2002
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
James F. D'Alton, Jr., Judge

Steven P. Hanna for appellant.

Stephen R. McCullough, Assistant Attorney
General (Jerry W. Kilgore, Attorney General,
on brief), for appellee.


A jury convicted DeCarlos D. Coleman (appellant) of second degree murder in violation of Code § 18.2-32 and use of a firearm in the commission of murder in violation of Code § 18.2-53.1.[1] Appellant contends the trial court erred by (1) allowing the Commonwealth to amend a jury instruction on transferred intent; and (2) failing to instruct on self-defense. For the reasons that follow, we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The jury acquitted appellant of the attempted murder of Mario Roach and the use of a firearm in that attempted murder.

## I. BACKGROUND

On August 31, 2000 appellant shot and killed Lucille Jones (decedent). That evening appellant and two friends, Aaron Briggs and Jamie Hairston, were driving in the City of Petersburg. Briggs had to use the bathroom, so the group stopped at the Lee Hall apartments. While Briggs was urinating by the curb, Fred Jones (Jones) pulled into the parking lot with his cousin Mario Roach (Roach) and a friend, Kevin Batts. Jones lived in the apartments with his mother and brother. Jones parked his car, got out and walked towards his apartment. At that point, appellant got out of his car, "ran" over to Jones and was "cussing him out." Appellant "got right there in front of" Jones and pulled a gun on him and asked, "What's up with that stuff now?"[2] Jones, who saw Briggs and knew him, asked for Briggs' help. "I said, Aaron, man, you know I ain't with that." Briggs vouched for Jones and got appellant to take the gun off Jones. Jones went to his apartment, and appellant and Briggs walked toward their car.

Briggs saw Kevin Batts in Jones' car. Briggs "had a beef" with Batts, so he went to the car to confront Batts. Briggs told Batts, "You're by yourself now, you know what I'm saying, what you going to do now? I should whoop your little ass."

---

[2] This question was apparently a reference to an incident five or six days earlier in which appellant's house was "shot up."

-

Briggs, with appellant watching, opened the car door and hit Batts "like two times" and "snatched" him out of the car. Batts "knew he couldn't beat me . . . so it really won't no fight."

According to appellant, when Briggs pulled Batts out of the car, he "heard a metal object hit the ground and picked it up." Roach got out of the back seat of Jones' car with a beer in his hand. "As soon as [Roach] got out of the car, appellant ran around the back of the car and asked [him] what [he] was going to do with the bottle." Appellant, still armed, put a gun in Roach's face. Roach "put [his] hands in the air" and backed away. When Roach backed up, appellant turned away and then "heard a shot." Appellant "returned the shot" "in the direction where I seen [sic] Fred Jones was at, where he had the gun at." Appellant testified that he was firing at Jones rather than Roach.

The bullet missed Jones and Roach but struck the decedent in the chest as she stood in her doorway. Roach turned and ran towards the apartment, where he saw the decedent "laid in the doorway." Jones "heard shots as soon as she opened the door." He "ran and got the phone, then ran to her because I heard, heard her fell [sic] to the floor." When Jones reached her, the decedent was "laying on the floor in the doorway." The decedent died of the gunshot wound, which penetrated her heart and right lung.

-

The Commonwealth indicted appellant for the first degree murder of Lucille Jones and the attempted murder of Roach. At trial, to conform the jury instructions to the evidence adduced, including that of appellant who stated that Jones was his intended target rather than Roach, the Commonwealth amended the proposed language of Instruction #13 from "Mario Roach" to "some person" as the basis of appellant's transferred intent. The trial court also refused to instruct the jury on self-defense. The jury convicted appellant of second degree murder of Lucille Jones and acquitted him of the attempted murder charge.

## II.  CONSTRUCTIVE AMENDMENT TO THE INDICTMENT

Appellant first contends that when the trial court amended the language of Instruction #13 to reflect that appellant attempted to shoot someone other than Roach, it resulted in an impermissible variance between the indictment and the evidence. Appellant objected as follows:

> [My] objection to Instruction Number 13, use of the term "some person," I object to that in that it should have stayed the original, which was "Mario Roach" in that any attempted killing of Fred Jones was supported by the evidence on the basis that— was supported by the evidence to go to the jury on the basis that Fred Jones fired first and [appellant] returned fire.

Appellant did not object to a "variance" or a "constructive amendment."[3]

_____

[3] We note that the original argument on the instructions occurred in chambers and no record of that discussion is before

-

The indictment reads, in pertinent part that, "DeCarlos Dewayne Coleman on about the 31st day of August in the year Two Thousand did willfully, deliberately and with premeditation, kill and murder one Lucille Jones against the peace and dignity of the Commonwealth of Virginia." There is no language on the face of the indictment regarding transferred intent. The indictment clearly charges appellant with the first degree murder of Lucille Jones. That is the same charge the trial court submitted to the jury. There was no amendment, constructive or otherwise, to the indictment.

Jury Instruction #13 originally read: "If you believe beyond a reasonable doubt that the defendant intended to kill Mario Roach but that he killed Lucille Jones by mistake, then the intent is transferred to the killing of Lucille Jones." After appellant's testimony that his intent was to fire in the direction of Jones rather than Roach, the trial court amended Instruction #13 to encompasses the factual scenarios of both the Commonwealth and the defense, that appellant intended to shoot a person other than the victim: "If you believe beyond a reasonable doubt that the defendant intended to kill some person but that he killed Lucille Jones by mistake, then the intent is

---

us. Just prior to instructing the jury, the trial court noted that appellant had an objection to Instruction #13 and stated "you can consider your objections preserved to those and you can re-explain your objection to that instruction when you read the other two [refused instructions] into the record after we close."

-

transferred to the killing of Lucille Jones."  Nothing in this instruction resulted in an amendment of the indictment, which charged appellant with the murder of Lucille Jones.  Thus, the trial court did not err in giving Instruction #13 defining the requirements of transferred intent.

Appellant's reliance on United States v. Floresca, 38 F.3d 706 (4th Cir. 1994), and Hawks v. Commonwealth, 228 Va. 244, 321 S.E.2d 650 (1984), is misplaced.  Both of these cases concerned a difference between the specific allegations made in the indictment and the proof of the crime at trial.  In Floresca, the defendant was charged with witness tampering in violation of 18 U.S.C. § 1512(b)(1); however the trial court "instructed the jury on the essential elements of 18 U.S.C. § 1512(b)(3)." Floresca, 38 F.3d at 709.  The trial court's instruction, therefore, amounted to a "constructive amendment of the indictment" because "the jury was allowed to return a guilty verdict upon a finding that Floresca approached [a potential witness] with the intent to affect either his cooperation in the investigation or his testimony at trial.  This resulted in a broadening of the bases for Floresca's conviction."  Id. at 711.[4] In Hawks, the defendant complained that although he was charged with abduction, the evidence adduced at trial "was at variance

_____

[4] Under the indictment, Floresca was expressly charged with attempting to affect the witness cooperation with the investigation.

-

with the charge of abduction for which he was indicted and that in essence, he was tried for abduction with the intent to defile." Hawks, 228 Va. at 247, 321 S.E.2d at 651. "A variance is fatal, however, only when the proof is different from and irrelevant to the crime defined in the indictment and is, therefore, insufficient to prove the commission of the crime charged." Id. at 247, 321 S.E.2d at 651-52. The instant case implicates neither of these scenarios.

We hold there was no fatal variance from the indictment because there was no variance at all. Instruction #13 accurately reflected the evidence adduced at trial and did not "broaden" the charge appellant faced.

### III. SELF-DEFENSE

Appellant next contends the trial court erred in refusing to instruct the jury on self-defense. We disagree. "Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt." Smith v. Commonwealth, 17 Va. App. 68, 71, 435 S.E.2d 414, 416 (1993) (citing McGhee v. Commonwealth, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978); Yarborough v. Commonwealth, 217 Va. 971, 979, 234 S.E.2d 286, 292 (1977)).

> "[A] person assaulted while in the discharge of a lawful act, and reasonably apprehending that his assailant will do him bodily harm, has the right to repel the assault by all the force he deems necessary, and is not compelled to retreat from his assailant, but

-

may, in turn, become the assailant,
inflicting bodily wounds until his person is
out of danger."

Dodson v. Commonwealth, 159 Va. 976, 979, 167 S.E. 260, 260

(1933) (quoting Jackson's Case, 96 Va. 107, 30 S.E. 452 (1898)).

"The evidence upon which [appellant] relies to support his

proffered instruction comes from his own testimony.  He is bound

by that testimony on appeal."  Waters v. Commonwealth, 39

Va. App. 72, 79, 569 S.E.2d 763, 766 (2002) (citing Delawder v.

Commonwealth, 214 Va. 55, 57, 196 S.E.2d 913, 915 (1973)).  We

view the evidence with respect to the refused instruction in the

light most favorable to the appellant.  Boone v. Commonwealth,

14 Va. App. 130, 131, 415 S.E.2d 250, 251 (1992).

So viewed, the evidence showed that appellant confronted

Jones, although he denied he had any weapons.  When Briggs told

Jones, "you all right [sic] with me, but I won't [sic] out there

when they came and they shot up the house," appellant and Briggs

"walked off" and Jones "ran in the house."  Appellant and Briggs

then saw Batts.  Appellant asked Briggs "don't you have some

beef with him?"  Whereupon, Briggs attacked Batts.

According to appellant, when Briggs pulled Batts out of the

car, he "heard a metal object hit the ground and picked it up."

Then appellant saw Roach get out of the back of the car with a

bottle in his hand.  Appellant conceded that Roach did not get

into the fight because appellant "met him," with gun in hand,

and asked Roach what he was going to do with the bottle.

-

Appellant said when Roach backed up, he turned away and then "heard a shot." Appellant turned around, saw Jones "with a gun in his hand" and "returned the shot." Appellant, however, neither saw Lucille Jones on the porch nor did he see anyone shoot at him. Appellant fled the scene with Briggs and Hairston.

> "Justifiable homicide in self-defense occurs [when] a person, without any fault on his part in provoking or bringing on the difficulty, kills another under reasonable apprehension of death or great bodily harm to himself." If an accused "is even slightly at fault" at creating the difficulty leading to the necessity to kill, "the killing is not justifiable homicide."

Smith v. Commonwealth, 17 Va. App. 68, 71, 435 S.E.2d 414, 416 (1993) (quoting Bailey v. Commonwealth, 200 Va. 92, 96, 104 S.E.2d 28, 31 (1958); Perricllia v. Commonwealth, 229 Va. 85, 94, 326 S.E.2d 679, 685 (1985); Dodson v. Commonwealth, 159 Va. 976, 981, 167 S.E. 260, 261 (1933)). "Any form of conduct by the accused from which the fact finder may reasonably infer that the accused contributed to the affray constitutes 'fault.'" Id. (quoting Bell v. Commonwealth, 2 Va. App. 48, 58, 341 S.E.2d 654, 659 (1986)). By his own testimony, appellant was not engaged in the discharge of a lawful act when he shot. To the contrary, appellant had instigated two separate confrontations: one with Jones and a second with Roach. Under the facts of this

-

case, a self-defense instruction was not warranted.

Accordingly, we affirm.

Affirmed.