COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, McClanahan and Beales
Argued at Lexington, Virginia


CLARENCE MICHAEL WISEMAN, JR.
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1060-10-3                 JUDGE ELIZABETH A. McCLANAHAN
                                                           MAY 3, 2011
COMMONWEALTH OF VIRGINIA


                 FROM THE CIRCUIT COURT OF THE CITY OF STAUNTON
                              Humes J. Franklin Jr., Judge

              Peter L. Boatner, Public Defender, for appellant.

              Donald E. Jeffrey, III, Senior Assistant Attorney General
              (Kenneth T. Cuccinelli, II, Attorney General; Josephine F. Whalen,
              Assistant Attorney General II, on brief), for appellee.


        A jury convicted Clarence Michael Wiseman, Jr., of second-degree murder.  On appeal,

Wiseman argues the trial court erred in denying his proposed jury instruction on justifiable

homicide (self-defense without fault), the court having instead instructed the jury only on

excusable homicide (self-defense with fault).  We reject Wiseman's argument and affirm his

conviction.

        When reviewing a trial court's denial of a proposed jury instruction, "we view the

evidence in the light most favorable to the proponent of the instruction."  Commonwealth v.

Vaughn, 263 Va. 31, 33, 557 S.E.2d 220, 221 (2002) (citation omitted).  "If the instruction is not

applicable to the facts and circumstances of the case" when so viewed, "it should not be given."

Avent v. Commonwealth, 279 Va. 175, 202, 688 S.E.2d 244, 259 (2010) (citation and internal

quotation marks omitted).  Under this standard, the "instruction is proper only if supported by

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

more than a scintilla of evidence." Id. Thus, in the absence of such evidence supporting the proposed instruction, there is no error in refusing it. Id.

Claiming self-defense in the killing of the victim, Wiseman sought to have the trial court instruct the jury on justifiable homicide, in addition to excusable homicide. Under Virginia law, "[k]illing in self-defense may be either justifiable or excusable homicide. 'Justifiable homicide in self-defense occurs where a person, *without any fault* on his part in provoking or bringing on the difficulty, kills another under reasonable apprehension of death or great bodily harm to himself.'" Yarborough v. Commonwealth, 217 Va. 971, 975, 234 S.E.2d 286, 290 (1977) (emphasis added) (quoting Bailey v. Commonwealth, 200 Va. 92, 96, 104 S.E.2d 28, 31 (1958)); see Dodson v. Commonwealth, 159 Va. 976, 167 S.E. 260 (1933). "'Excusable homicide in self-defense,'" on the other hand,

> "occurs where the accused, although in some fault in the first instance in provoking or bringing on the difficulty, when attacked retreats as far as possible, announces his desire for peace, and kills his adversary from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm."

Yarborough, 217 Va. at 975, 234 S.E.2d at 290 (quoting Bailey, 200 Va. at 96, 104 S.E.2d at 31).

Consequently, "'[i]f a defendant is even slightly at fault, the killing is not justifiable homicide.'" Avent, 279 Va. at 203, 688 S.E.2d at 259 (quoting Perricllia v. Commonwealth, 229 Va. 85, 94, 326 S.E.2d 679, 685 (1985)); see Perkins v. Commonwealth, 186 Va. 867, 876, 44 S.E.2d 426, 430 (1947) ("[I]n order for a homicide to be 'justifiable,' as distinguished from 'excusable,' the accused must have been entirely free from fault in bringing on the controversy." (citations omitted)); Smith v. Commonwealth, 165 Va. 776, 785, 182 S.E. 124, 128 (1935) (explaining that defendant "must have been without fault in the 'minutest degree'"); Dodson, 159 Va. at 981, 167 S.E. at 261 (same). In this context, "any form of conduct on the part of the accused" that may be reasonably viewed as "contribut[ing] to an affray" constitutes "fault." Bell

- 2 -

v. Commonwealth, 2 Va. App. 48, 58, 341 S.E.2d 654, 659 (1986) (citing Dodson, 159 Va. at 981, 167 S.E. at 261).

Here, Wiseman and Charles Moore (the victim), along with Moore's girlfriend, Connie Lotts, lived together in a house in the City of Staunton. On the day of Moore's death, the three of them rode with a mutual friend, James Carter, to Carter's house nearby, where Wiseman and Moore became extremely intoxicated after each of them consumed approximately a quart of whiskey within a period of thirty-five minutes. Moore then made some comment about Carter's daughter that Wiseman found objectionable. Wiseman told Moore to "watch his mouth" and physically assaulted Moore. As Wiseman admitted, "I swung on him first." A fight ensued, but ended quickly after Moore, the stronger of the two men, knocked Wiseman to the ground and punched and kicked him.

The conflict between Wiseman and Moore continued with verbal threats, both of them exclaiming that the fight was "not over." Wiseman also stated to Moore, "I ain't gonna take no more of these ass whoopins like that," and that he was going to "get him [Moore] back." Wiseman then walked over to where Moore was sitting and hit Moore again. At that point, Wiseman received "the second beating" from Moore.

When the second fight ended, Carter insisted on driving Wiseman, Moore, and Lotts back to their house. During the drive, Wiseman and Moore repeated their verbal threats, each saying to the other, "I am goin' to get you again." Between 7:30 p.m. and 8:00 p.m., Wiseman and Lotts got out of Carter's vehicle at their house, while Moore got out a couple of blocks away. A "little while" later, Moore returned to the house with a bottle of distilled wine. Moore and Wiseman then started drinking the wine and resumed their quarrel.

Lotts called the police. When Staunton Police Officer Berbes arrived at around 8:15 p.m., he found Wiseman, Moore, and Lotts on the front porch arguing, and each of them intoxicated.

Wiseman indicated to Officer Berbes that Moore was preventing him from going back inside the house. After Officer Berbes spoke with Moore, the parties mutually agreed that Wiseman would go upstairs to his bedroom and close the door. Officer Berbes waited with Moore until Wiseman had done so.

After going to his room, Wiseman went to bed. Wiseman then heard Moore yelling at him from downstairs, calling him a "fat son of a bitch," and saying "it ain't over with yet." Wiseman responded by getting his pepper spray, going downstairs, and spraying Moore in the face. When Lotts tried to separate Wiseman and Moore, Wiseman also sprayed Lotts in the face with pepper spray.

Moore ran to the kitchen and wiped his face with a towel. As Moore left the kitchen and "went stumblin' through the house," according to Wiseman, Moore called Wiseman a "son of a bitch" and threatened to kill him. Moore then called the police and asked for Wiseman to be removed from the house. During that time, Wiseman went to the kitchen and armed himself with a kitchen knife because he was "scared [Moore] was going to attack" him. In fact, as Wiseman later stated to the police, at the time he got the knife from the kitchen, "I was getting ready to stab [Moore] because I didn't know what he was gonna do because the man already done beat the hell out of me." However, when Staunton Police Officer Carson arrived, which was shortly after 9:00 p.m., Wiseman threw the knife down in the dining room.

Moore met Officer Carson at the front door, and Wiseman joined them approximately a minute later. According to the officer, Moore said he was having problems with his tenant, Wiseman, claiming Wiseman was "too drunk to make sense." Both Moore and Wiseman, the officer explained, were clearly intoxicated. The officer testified that Wiseman denied he and

- 4 -

Moore had been having problems, that Wiseman said he was getting ready to go to bed, and that Moore just wanted Wiseman to do so.[1] When Wiseman started up the steps, the officer left.

Less than thirty minutes later, Wiseman was back downstairs in the front room of the house again arguing with Moore. Wiseman then retrieved the kitchen knife from the dining room, returned to the front room where Moore was sitting in a chair, and sat down on the couch next to Moore. At that point, according to Wiseman, Moore reached over and smacked him in the face. Both men then jumped up and Moore started toward Wiseman, saying he was going to kill him. Wiseman warned Moore that if he came any closer, Wiseman would "do what I got to do." When Moore came closer, Wiseman stabbed Moore twice in the chest, killing him.

Viewing the facts in the light most favorable to Wiseman, we conclude as a matter of law that Wiseman was at fault, at least in part, for his conflict with Moore, resulting in Moore's death. It is uncontroverted that, on the day of Moore's death, Wiseman physically assaulted Moore three times during the course of their ongoing conflict, made a series of verbal threats against Moore, and otherwise generally contributed to perpetuating the controversy to its fatal conclusion, all while in a state of voluntary intoxication. See Avent, 279 Va. at 203, 688 S.E.2d at 259 (affirming trial court's denial of defendant's proposed justifiable homicide jury instruction due to defendant's "fault in bringing on the difficulty" leading to victim's death). The trial court thus correctly rejected Wiseman's proposed jury instruction on justifiable homicide as inapplicable, where the instruction was not "'supported by more than a scintilla of evidence'" that would indicate Wiseman was without fault for the conflict resulting in Moore's death. Id. at 202, 688 S.E.2d at 259 (quoting Commonwealth v. Sands, 262 Va. 724, 729, 553 S.E.2d 733, 736 (2001)); see Andrews v. Commonwealth, 280 Va. 231, 274-77, 699 S.E.2d 237, 261-63 (2010); Porter v. Commonwealth, 276 Va. 203, 242-43, 661 S.E.2d 415, 434-35 (2008).

---

[1] On cross-examination at trial, Wiseman stated he could not remember his conversation with Officer Carson.

For these reasons, we affirm Wiseman's conviction.

Affirmed