COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, Chafin and O'Brien
Argued by teleconference


ULYSSES LEE KEELING

                                              MEMORANDUM OPINION[*] BY
v.      Record No. 1950-14-1                  JUDGE RANDOLPH A. BEALES
                                              DECEMBER 8, 2015

COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                      H. Thomas Padrick, Jr., Judge

        Taite A. Westendorf, Senior Assistant Public Defender, for
        appellant.

        Aaron J. Campbell, Assistant Attorney General (Mark R. Herring,
        Attorney General, on brief), for appellee.


        Ulysses Keeling (appellant) was convicted of one count of robbery in violation of Code

§ 18.2-58, one count of use of a firearm in the commission of a robbery in violation of Code

§ 18.2-53.1, and one count of first-degree murder in the commission of a felony in violation of Code

§ 18.2-32.  Appellant argues on appeal that the circuit court erred when it denied appellant's motion

to pursue a self-defense claim and to present evidence of the victim's prior bad acts, and when it

refused to allow evidence of the victim's intoxication at the time of his death.  For the reasons

below, we affirm the circuit court.

                                    I.  BACKGROUND

                                  A.  Pretrial Hearing

        At a February 25, 2014 hearing, appellant asked to present evidence of the victim's prior

bad acts and to pursue a self-defense claim at his jury trial based on the theory that appellant had

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

a "claim-of-right" defense to robbery and thus was entitled to assert self-defense. The circuit court denied the motion in part, saying, "The court's going to deny your motion for the claim of right as it pertains to the murder charge based on the fact that you're going to have to at least show the retreat, which you indicate you don't have at this point." After the court's ruling, appellant's trial counsel said, "The court is obviously ruling that I wouldn't be allowed to introduce the prior bad acts, Judge; but is the court also suggesting that I can't ask questions regarding what occurred back there? I'm trying to clarify to make sure." The court responded, "I'm not going to give you an advisory ruling. I think that – You have the three witnesses here, and it may be appropriate on rebuttal. I don't know. I don't know what he's going to testify to if he testifies at all."

## B. Evidence At Trial[1]

On the evening of December 27, 2012, Officer Sean Lindenmeyer (Officer Lindenmeyer) of the Virginia Beach Police Department responded to a call regarding a male – later identified as Rafael Hernandez (the victim) – lying in the road. Terence Wilson (Wilson) testified at trial as an eyewitness. Wilson had been close friends with appellant for years and had contacted him on December 27, 2012 to make plans for the two to purchase cocaine. Wilson asked his friend, Richard Barlow (Barlow), to drive him to the purchase location. Barlow also testified at trial. Barlow located a cocaine dealer for Wilson and transported him to the dealer. The dealer was the victim in this case. Appellant was not present for this transaction. Wilson testified that the victim first attempted to sell him fake cocaine. When Wilson refused to buy the substance, the victim offered a different substance that Wilson accepted as cocaine. Wilson paid the victim

---

[1] "When reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction." Commonwealth v. Vaughn, 263 Va. 31, 33, 557 S.E.2d 200, 222 (2002). While this is not the standard for all issues in the assignments of error in this case, we will recite the facts in the light most favorable to appellant as the proponent of the jury instruction to avoid reciting the facts twice.

$800 for the cocaine, $600 of which was appellant's money and $200 of which was Wilson's money. Later that day, Wilson gave the cocaine to appellant and left with Barlow. Sometime later, appellant called and told Wilson that the cocaine "was fake."

Barlow drove Wilson and appellant to meet with the victim. Wilson sat in the passenger seat, and appellant sat in the back seat on the passenger's side of the car. Barlow had not met appellant before the day of the murder. When the three arrived at the victim's house, Barlow parked the car across the street, and the victim got in the back seat on the driver's side of the car next to appellant. Wilson had "the stuff and some of the stuff that was cooked up" in a Pyrex dish. The victim discussed the quality of the cocaine with appellant. The victim and appellant then began arguing, and Wilson testified that appellant was angry and "drew the gun." Wilson and Barlow testified that appellant said to the victim, "[W]here's my motherfucking money?" He also made the victim take off his jacket. Barlow testified that appellant told the victim that he was "going to die tonight." The victim then called an unidentified individual on his cell phone apparently in an attempt to get money for appellant. When asked if he knew why the victim made the phone call, Wilson testified, "Yeah. Because when the gun was drawn, you know, they was arguing, and he was like, you know, [y]ou need to call whoever you need to call to get my money back." When the phone call ended, the victim lunged at appellant and began wrestling with him presumably in an attempt to disarm him. Wilson testified that appellant "ducked down . . . sort of cowering" when the victim began to hit him, but appellant was still holding his gun. Wilson and Barlow testified that they got out of the car after the victim and appellant began wrestling. Barlow testified that, next, he heard a gunshot, saw a flash in the back seat, and then saw the victim open the rear passenger door and fall to the pavement. Wilson testified that he saw the victim fall back, reach the door handle, and fall out.

Appellant got out of the car and told Barlow and Wilson that they all had to leave. Barlow drove while appellant threw the victim's belongings out of the car. Detective Ray Pickell of the Virginia Beach Police Department testified that, based on his examination of the crime scene, the jacket (which was found in good condition) was thrown out of the vehicle on the opposite side of the victim. A forensic technician recovered the victim's cell phone, which had been lying on the road in pieces at a nearby Shell gas station. Barlow testified that appellant said, with a calm and normal, yet angry demeanor, that he could not believe the victim had fought him when appellant was the one with the gun and the victim was so small. Barlow also testified that "[appellant] said he was going to go back and finish him off."

Appellant proffered a certificate of analysis performed on the victim, which showed that the victim had .05% alcohol by weight by volume and .13 milligrams of cocaine per liter of blood in his system. Dr. Elizabeth Kinnison (Dr. Kinnison), the Assistant Chief Medical Examiner for the Commonwealth of Virginia, testified outside of the presence of the jury that the victim had cocaine and alcohol in his system when he died. Appellant's trial counsel asked Dr. Kinnison whether cocaine increases aggressiveness. Dr. Kinnison responded, "It potentially can, but I don't know that specifically in a specific person." Appellant also proffered three witnesses who would have testified about the victim's prior convictions for violent crimes.

During the trial, appellant's counsel asked for a jury instruction on excusable self-defense and asked to put on evidence of the victim's prior bad acts. The circuit court denied both requests.[2]

---

[2] At oral argument before this Court, counsel for appellant acknowledged that he was advocating for the affirmative defense of excusable self-defense only – not under the theory of justifiable self-defense.

II. ANALYSIS

A. Standard of Review

A circuit court's decision to admit or exclude evidence is reviewed using an abuse of discretion standard. "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988).

"As a general rule, the matter of granting and denying instructions does rest in the sound discretion of the trial court." Cooper v. Commonwealth, 277 Va. 377, 381, 673 S.E.2d 185, 187 (2009). To the extent that this Court addresses the circuit court's denial of a proposed jury instruction, we will review the record to determine whether there was more than a mere scintilla of evidence in support of the proponent's jury instruction. "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Id. (quoting Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 718 (1988)). A reviewing court examines the facts in the light most favorable to the proponent of the denied jury instruction. Commonwealth v.Vaughn, 263 Va. 31, 33, 557 S.E.2d 200, 222 (2002).

B. No Evidence of Excusable Self-Defense

Appellant alleges, "The trial court erred by denying appellant's motion(s) to present evidence of Hernandez' (the deceased) prior bad acts and to pursue appellant's self-defense claim."[3] We hold that the circuit court did not err in denying appellant's proposed jury instruction for excusable self-defense, in light of the evidence presented at trial.

---

[3] At the hearing on February 25, 2014, the circuit court withheld a ruling on whether evidence that would support an excusable self-defense jury instruction was admissible in order to evaluate the evidence at trial. After hearing the Commonwealth's evidence at trial, appellant asked for a jury instruction based on excusable self-defense. The court denied the proposed jury

"Jury instructions are properly refused if not supported by more than a scintilla of evidence." Rhodes v. Commonwealth, 41 Va. App. 195, 200, 583 S.E.2d 773, 775 (2003).

> The Virginia appellate courts have not defined the term "scintilla."
> Although this term has a generally accepted meaning of "a spark"
> or "the least particle," the precise limitations of this term must
> necessarily be determined in the factual context of a particular
> case. The determination of whether the minimum quantum of
> credible evidence supports a particular proposition is largely a
> factor of determining the weight of that evidence in comparison to
> the weight of the other credible evidence that negates the
> proposition in question. . . . [T]he weight of the credible evidence
> that will amount to more than a mere scintilla of evidence is a
> matter to be resolved on a case-by-case basis.

Brandau v. Commonwealth, 16 Va. App. 408, 411-12, 430 S.E.2d 563, 565 (1993).

The circuit court denied appellant's request for a jury instruction on excusable self-defense.

> Excusable homicide in self-defense occurs where the accused,
> although in some fault in the first instance in provoking or bringing
> on the difficulty, when attacked retreats as far as possible,
> announces his desire for peace, and kills his adversary from a
> reasonably apparent necessity to preserve his own life or save
> himself from great bodily harm.

Bailey v. Commonwealth, 200 Va. 92, 96, 104 S.E.2d 28, 31 (1958) (citing 9 Mich. Jur., Homicide, § 4, p. 347; Dodson v. Commonwealth, 159 Va. 976, 167 S.E. 260 (1933)).

In this case, we find that appellant has not presented the required evidence to merit an excusable self-defense jury instruction. For example, at a minimum, the record reveals no evidence that appellant announced his desire for peace before killing the victim. Rather, appellant provided the following evidence in support of his self-defense claim. Wilson testified that appellant was angry because he spent $600 to purchase cocaine and did not think he had received the actual illegal product for which he had paid. Appellant then gathered his friend and

instruction. Therefore, the "self-defense claim" appellant asserts the circuit court denied him must be the circuit court's denial of appellant's proposed excusable self-defense jury instruction.

- 6 -

a driver and went to the victim's house with a gun. Once he got the victim in his car and sitting in the back seat, appellant demanded his money back. When the victim would not give him any money, appellant drew his gun. Appellant demanded the victim's jacket and money, threatening him with the gun. The victim then made a phone call in an effort to get money. When he hung up the phone, he lunged at appellant and the two began fighting. Wilson testified that he saw appellant "sort of cowering" toward the rear passenger door, still holding the gun. However, neither Wilson nor Barlow heard appellant say anything during the struggle. On the ride away from the scene after he shot the victim, appellant appeared calm while throwing the victim's belongings out of the window. Barlow testified that appellant even said that "he was going to go back and finish him off."

This evidence does not support a jury instruction for excusable self-defense, even when viewed in the light most favorable to appellant. He argues on appeal that appellant's act of "cowering" was enough to show not only retreat but also his intention for peace. However, appellant's act of shielding his face and crouching toward the car door to protect himself from the victim's blows is more evidence that he was briefly losing the fight than that he was retreating. Regardless, and most importantly, it cannot be considered evidence that appellant *announced* his desire for peace. To conclude otherwise would require this Court to analyze appellant's uncommunicated thoughts and motives, and would eviscerate the requirement that a defendant announce his desire for peace in order to avail himself of the excusable self-defense jury instruction. See Bailey, 200 Va. at 96, 104 S.E.2d at 31(holding that a defendant must "announce[] his desire for peace" in order to assert a claim of excusable self-defense). Therefore, without having received *any* evidence of appellant's declaration of his desire for peace, the circuit court did not err in rejecting the proposed excusable self-defense jury

instruction. Thus, we hold that the circuit court's denial of appellant's proposed jury instruction was not error.[4]

### C. Motion to Present Evidence of Victim's "Prior Bad Acts"

Appellant alleges in his first assignment of error that the circuit court's refusal to allow appellant to "present evidence of Hernandez'[s] (the deceased) prior bad acts . . ." was error. Relying on Barnes v. Commonwealth, 214 Va. 24, 197 S.E.2d 189 (1973), appellant contends that he should have been allowed to put on evidence of the victim's previous violent crimes. In Barnes, the Court reiterated the longstanding rule that "where an accused adduces evidence that he acted in self-defense, evidence of specific acts is admissible to show the character of the decedent for turbulence and violence, even if the accused is unaware of such character." Id. at 25-26, 197 S.E.2d at 190 (citing Stover v. Commonwealth, 211 Va. 789, 180 S.E.2d 504 (1971); Randolph v. Commonwealth, 190 Va. 256, 56 S.E.2d 226 (1949)). However, evidence of a victim's character for violence "is admissible only when the defendant has interposed a plea of self-defense . . . and when a proper foundation is laid by proof of some overt act justifying such defense . . . ." Burford v. Commonwealth, 179 Va. 752, 767, 20 S.E.2d 509, 515 (1942) (alteration in original) (quoting State v. Jennings, 28 P.2d 448 (Mont. 1934)). As we have already held supra, the record does not contain enough evidence to support a claim of excusable self-defense. Consequently, we hold that the circuit court did not err in excluding evidence of the victim's prior bad acts.

### D. Circuit Court's Proper Refusal of Evidence of Victim's Intoxication at the Time of Death

Appellant sought to admit evidence of the victim's intoxication through the toxicology report on the victim and Dr. Kinnison's proffered testimony. The circuit court held that the

---

[4] The Commonwealth argues that excusable self-defense should never be a viable defense to first-degree felony murder. However, we do not need to address that question, given that we have resolved this case on narrower grounds.

toxicology report was not relevant and, therefore, was inadmissible. Appellant argues that the circuit court erred "in refusing to allow into evidence that the deceased was found to have cocaine and alcohol in his system at the time of his death." Appellant asserts that evidence of the victim's intoxication is relevant for three reasons. First, appellant argues that the victim's intoxication makes it more likely that the victim was violent and aggressive, which supports appellant's "claim of right" theory that the victim was "involved in a high risk drug scam and willing to take the risk of refusing to refund the money." Second, appellant argues that the victim's intoxication makes it more likely that, through his struggling with appellant, the victim caused the gun to fire. Third, appellant argues that the victim's intoxication makes it more likely that the victim was the aggressor, thus strengthening appellant's excusable self-defense claim. All three arguments advanced by appellant rely on the same invalid assumption – that appellant is entitled in this case to a jury instruction for excusable self-defense. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. Because the victim's intoxication would only be relevant to an excusable self-defense claim in this case, the victim's intoxication does not tend to establish or negate a fact at issue in this case. Therefore, we hold that the circuit court properly denied the introduction of evidence of the victim's intoxication because such evidence was not relevant.

### III. CONCLUSION

In summary, this Court holds that the circuit court did not err when it denied appellant's request for a jury instruction on excusable self-defense, denied the admission of evidence of the victim's prior bad acts, and denied the admission of the toxicology report on the victim. Accordingly, we affirm appellant's conviction for one count of robbery in violation of Code § 18.2-58, one count of use of a firearm in the commission of a robbery in violation of Code

§ 18.2-53.1, and one count of first-degree murder in the commission of a felony in violation of Code § 18.2-32.

Affirmed.