COURT OF APPEALS OF VIRGINIA

Present:    Judges Elder, Petty and Alston
Argued by teleconference


SHELDON ANDRE SWILLING

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0548-10-1                      JUDGE ROSSIE D. ALSTON, JR.
                                                           MAY 17, 2011
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                             Leslie L. Lilley, Judge

        Kimberly R. Smith, Assistant Public Defender (Office of the Public
        Defender, on brief), for appellant.

        Kathleen B. Martin, Senior Assistant Attorney General (Kenneth T.
        Cuccinelli, II, Attorney General, on brief), for appellee.


        Following a bench trial, Sheldon Andre Swilling (appellant) was convicted of brandishing a

firearm, in violation of Code § 18.2-282.  On appeal, appellant challenges the sufficiency of the

evidence to support his conviction.  He concedes the evidence proved that he brandished a firearm

but argues that his behavior was not criminal, claiming he brandished the firearm in self-defense.

For the following reasons, we affirm the judgment of the trial court.

                                    I.  BACKGROUND[1]

        In this misdemeanor matter, there was no transcript of the proceeding below.

Accordingly, the evidence presented in the circuit court is provided in this appeal by an agreed

statement of facts duly signed by the trial judge.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] As the parties are fully conversant with the record in this case, and because this
memorandum opinion carries no precedential value, this opinion recites only those facts and
incidents of the proceedings as are necessary to the parties' understanding of this appeal.

On April 21, 2009, DeToni Oakley (DeToni) called her father Oswald Oakley (Oakley).[2] She made the telephone call from the townhouse that she shared with her sister, Shannon Oakley (Shannon). On the telephone, Oakley could hear the sound of yelling, so he assumed that DeToni needed assistance. Oakley recognized the voice of appellant, whom Oakley knew through Shannon, in the background. Concerned, Oakley and his ex-brother-in-law, Clint Roberts (Roberts), hurried to DeToni's house.

Upon arriving at DeToni's townhouse, Oakley and Roberts split up. Oakley went through the front door of DeToni's townhouse, and Roberts went around the side of the townhouse. Appellant, who had been alerted to Oakley's and Roberts' arrival by the sound of the truck driving down the road, attempted to exit the townhouse through the back door. When he encountered Roberts, he attempted to go back through the house. After meeting Oakley in the house, appellant again exited the house through the back door.

Oakley testified that he walked through the house to the backyard, where he encountered appellant. According to Oakley, appellant brandished a handgun, racked the slide of the weapon, and "advised both men to not come any further or he would shoot." Oakley stated that at that time, he was thirty to thirty-five feet away from appellant and Roberts was three to four feet away from appellant. Neither Oakley nor Roberts was armed with a weapon. Shannon testified that Oakley and Roberts were shouting at appellant; Oakley denied this allegation.

Oakley testified that he did not approve of Shannon dating appellant. Oakley admitted that two years prior to the behavior at issue in the instant appeal he found Shannon, who was then sixteen years old, having sex with appellant. After the incident, Oakley held appellant at

_____

[2] The written statement of facts does not reflect the date the incident occurred; however, the criminal complaint suggests the incident occurred on April 21, 2009.

gunpoint for more than an hour, threatening to kill him and his family. He also admitted that on that prior occasion, he had called another individual to his home to help him confront appellant.

Shannon also testified regarding the incident that occurred after Oakley discovered her and appellant having sex. She stated that Oakley waved a gun in the air while slapping her and screaming at both her and appellant. She stated that Oakley held appellant at gunpoint for one and one-half hours and threatened to kill him and his family. According to Shannon, Oakley's friend threatened to cut off appellant's fingers. Oakley subsequently refused to allow Shannon to live with him any longer and ordered her not to see appellant.

Shannon testified that on the date of the brandishing, she and appellant went to DeToni's townhouse to confront her about money Oakley had left with DeToni for Shannon. Surreptitiously, DeToni called Oakley during the ensuing argument. When Oakley arrived at DeToni's townhouse, appellant attempted to escape, but Shannon stated he was "cornered [in the backyard] with his back to a fence with her and her father and . . . Roberts in front of him shouting at him." Shannon stated that appellant put his hand on his waist to show Oakley and Roberts that he had a weapon and that appellant advised the men not to "proceed any further or he would shoot." Shannon stated that Roberts was three feet from appellant and Oakley was a "few more feet away" from appellant when appellant told them not to come any closer. In closing, Shannon stated that she loved appellant, but that she would not lie for him.

During questioning by the police, appellant admitted that on the date of the incident, he possessed a gun. He stated that he had thrown it away after the incident and he "was sorry for everything."

After both parties rested, appellant moved to strike the evidence, arguing that given the past history between appellant and Oakley, appellant feared for his life when he brandished the weapon. Appellant argued that because self-defense is a legal justification for brandishing a

- 3 -

firearm, appellant had not behaved criminally. The trial court rejected appellant's argument and found him guilty of brandishing a firearm.

This appeal followed.

## II. ANALYSIS

Code § 18.2-282(A) states in pertinent part:

> It shall be unlawful for any person to point, hold or brandish any firearm . . . in such manner as to reasonably induce fear in the mind of another or hold a firearm . . . in a public place in such a manner as to reasonably induce fear in the mind of another of being shot or injured. However, this section shall not apply to any person engaged in excusable or justifiable self-defense.

Appellant argues that because he was acting in self-defense, his brandishing of the firearm was not prohibited criminal conduct.

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt." Smith v. Commonwealth, 17 Va. App. 68, 71, 435 S.E.2d 414, 416 (1993) (citing McGhee v. Commonwealth, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978)). Whether appellant "prove[d] circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact." Id. (citing Yarborough v. Commonwealth, 217 Va. 971, 979, 234 S.E.2d 286, 292 (1977)). "The trier of fact determines the weight of evidence in support of a claim of self-defense." Gardner v. Commonwealth, 3 Va. App. 418, 426, 350 S.E.2d 229, 233-34 (1986) (citing Yarborough, 217 Va. at 979, 234 S.E.2d at 291-92; Dodson v. Commonwealth, 159 Va. 976, 984-85, 167 S.E. 260, 262 (1933)). The "trial judge's factual findings will not be disturbed on appeal unless plainly wrong or without evidence to support them." Smith, 17 Va. App. at 71, 435 S.E.2d at 416 (citing Yarborough, 217 Va. at 979, 234 S.E.2d at 292).

- 4 -

Virginia courts have long recognized that

> a person who reasonably apprehends bodily harm by another is privileged to exercise reasonable force to repel the assault. Jackson v. Commonwealth, 96 Va. 107, 113, 30 S.E. 452, 454 (1898); see also Montgomery v. Commonwealth, 99 Va. 833, 835, 37 S.E. 841, 842 (1901) (recognizing the right of a landowner "to order [a trespasser] away, and if he refuse[s] to go, to use proper force to expel him" so long as no breach of the peace is committed in the outset). The privilege to use such force is limited by the equally well recognized rule that a person "shall not, except in extreme cases, endanger human life or do great bodily harm." Montgomery v. Commonwealth, 98 Va. 840, 843, 36 S.E. 371, 372 (1900). Moreover, the amount of force used must be reasonable in relation to the harm threatened. See id. at 844, 36 S.E. at 373 ("it is not reasonable to use deadly force to prevent threatened harm to property, such as a mere trespass or theft"); W. LaFave & A. Scott, Criminal Law § 5.9(a) (2d ed. 1986).

Diffendal v. Commonwealth, 8 Va. App. 417, 421, 382 S.E.2d 24, 25-26 (1989).

In addition, "whether the danger is reasonably apparent is always to be determined from the viewpoint of the defendant at the time he acted." McGhee, 219 Va. at 562, 248 S.E.2d at 810. "'[P]rior acts of violence by the victim [are] relevant as bearing on the reasonable apprehension which the defendant may have experienced . . . .'" Luck v. Commonwealth, 30 Va. App. 36, 43, 515 S.E.2d 325, 328 (1999) (quoting Edwards v. Commonwealth, 10 Va. App. 140, 142, 390 S.E.2d 204, 206 (1990)).

Neither Oakley nor Roberts displayed or threatened to use a firearm or other weapon on the date of the instant offense, and the statement of facts indicates the men were not armed. Furthermore, while there was evidence that they shouted at appellant, there is no evidence that these shouts evidenced an intention by either Oakley or Roberts to inflict bodily harm on appellant. Moreover, although appellant fled when Oakley arrived, the fact-finder was free to conclude that appellant failed to prove that he reasonably apprehended a danger of harm to himself. While Oakley had held appellant at gunpoint two years earlier in another confrontation, which would have supported a finding that appellant *could* reasonably have feared for his safety

- 5 -

when Oakley and Roberts confronted him on April 21, 2009, the trier of fact was free to conclude appellant failed to prove he in fact harbored such fear on that date.[3]

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (citing Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985); Carter v. Commonwealth, 223 Va. 528, 532, 290 S.E.2d 865, 867 (1982)). Based on the record before this Court, we cannot say that the trial court's factual determination that appellant did not act in self-defense when he brandished the handgun was plainly wrong.

Accordingly, finding no error, we affirm the judgment of the trial court.

Affirmed.

---

[3] This is not a case where the trial judge failed to *instruct* the jury on self-defense. Here, the trial judge was responsible for making both legal and factual determinations, and we simply defer to the trial court's factual determination that defendant did not carry his burden of proving self-defense.